IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LATIA M. JONES,                    §
                                   §
        *Pro Se* Plaintiff,        §
                                   §
VS.                                §   CIVIL ACTION NO. H-12-3688
                                   §
FJC SECURITY SERVICES, INC.,       §
                                   §
        Defendant.                 §

<u>OPINION AND ORDER</u>

Pending before the Court in the above referenced cause alleging racial and gender discrimination in Defendant FJC Security Services, Inc.'s ("FJC's") failure to provide a full-time position, failure to promote, and wrongful termination, retaliation, and a hostile work environment under Title VII of the Civil Rights Act of 1965, as amended, 42 U.S.C. § 2000e, *et seq.*, is FJC's motion for summary judgment (instrument #27). *Pro se* Plaintiff LaTia M. Jones ("Jones") has failed to file a response.

**Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v.*

*City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th

Cir. 1991).   The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

It is well established in the Fifth Circuit that "[a] federal court may not grant a 'default' summary judgment where no response has been filed." *Bradley v. Chevron U.S.A., Inc.*, No. Civ. A. 204CV092J, 2004 WL 2847463, *1 (N.D. Tex. Dec. 10, 2004), *citing Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).   Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment. *Id. at *1 and n. 2, citing id.; see also Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003)(where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). *See also Unum*

*Life Ins. Co. of America v. Long,* 227 F. Supp. 2d 609 (N.D. Tex.
2002)("Although the court may not enter a 'default' summary
judgment, it may accept evidence submitted by [movant] as
undisputed."); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D.
Tex. 1996)("A summary judgment nonmovant who does not respond to
the motion is relegated to [his] unsworn pleadings, which do not
constitute summary judgment evidence.").

### Allegations of the Original Complaint (#1)

Jones is a black African American female, who states that
she was rehired by FJC in February 2010, when Mark Machi,
President of Federal Services FJC, promised Plaintiff a full-time
job and the right to choose her work location.  Instead Captain
Albert Johnson ("Johnson") of FJC assigned her to work nights in
a location that was isolated from other employees and told her
that "[i]t was Management's Decision."  Afraid she might lose her
job if she protested, she accepted the assignment.  Then on April
9, 2010 she was laid off.  There were no daytime openings at that
location, so Jones contacted FJC's Project Manager, Greg, who
told her that Johnson would take care of her.  Johnson contacted
Jones and reassigned her to another location, again secluded from
other employees and in scorching heat.  When she asked for a
better assignment, Johnson removed her from the work schedule so
she had no hours of work.  When she asked him for work, he told
her that there was no work for her.

Jones claims that during this time two male employees of FJC
received complaints from their client and the client asked that

the employees be removed from the client's site, but they were not terminated for violating company policy nor in fear of losing a client.  Instead the two were re-assigned to other positions in the FJC.  Jones claims that positions were available for her to work, but that she was repeatedly told there was no available work for her.  She contends that female employees were treated differently than their male counterparts with regard to discipline and termination.

Jones then filed a grievance with her labor union, the United Government Security Officers of America Local 237, complaining of the lack of full-time hours, which she claims had been guaranteed to her by Machi at the time of her hiring.  Her grievance purportedly was ignored and discarded at the local and international levels.  She filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 10, 2010, and a determination was rendered on September 19, 2012.  Since she filed the charge of discrimination, she alleges that "countless and unexplained disciplinary actions have been taken against" her by Johnson without just cause.  She asserts that she is continuously being "denied benefits and forced to accept unpaid wages."

### Applicable Law

Under section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1), it is "an unlawful employment action for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."

Under the statute, suit may be brought under two distinct theories of discrimination, disparate treatment and disparate impact. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977); *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006), *cert. denied*, 549 U.S. 888 (2006).  Title VII expressly prohibits both (1) intentional discrimination based on race, color, religion, sex or national origin, known as "disparate treatment," as well as (2) an employer's facially neutral practices that are discriminatory in operation against protected groups (race, color, religion, sex or national origin) and not required by the nature of the job, known as "disparate impact". 42 U.S.C. §§ 2000e-2(a)(1) and 2000e(k)(1)(A); *Ricci v. DeStefano*, 129 S. Ct. 2658, 2672-73 (2009); *Pacheco*, 448 F.3d at 787.  The instant suit is one for disparate treatment, which requires proof of discriminatory motive. *Pacheco*, 448 F.3d at 787.

Plaintiffs claiming employment discrimination must exhaust administrative remedies by filing a timely charge with the EEOC and receiving a right-to-sue notice. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).  Failure to exhaust administrative remedies "is not a procedural 'gotcha' issue," but "a mainstay of proper enforcement of Title VII remedies."

*McClain v. Lufkin Industries, Inc.*, 519 F.3d 364, 272 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 198 (2008).  A private plaintiff must exhaust its administrative remedies before seeking relief by filing an administrative charge with the EEOC.  42 U.S.C. § 2000e-(5)(b); *id.*   Under Title VII, 42 U.S.C. § 2000e-5(e)(1), a charge of discrimination must be filed with the EEOC within 180 days after the occurrence of the alleged discriminatory practice unless the complainant has instituted proceedings with a state or local agency with the authority to grant or seek relief from unlawful employment practices, under which circumstances the period for filing such a charge with the EEOC is extended to 300 days.  *Griffin v. City of Dallas*, 26 F.3d 610, 612 (5th Cir. 1994).  In Texas, the qualifying state agency originally was the Texas Commission on Human Rights ("TCHR").  Effective March 1, 2004, the Texas Workforce Commission, Civil Rights Division, assumed the powers and duties of the TCHR.  *Little v. Texas Dept. of Crim. Justice*, 148 S.W. 3d 374, 377-78 (Tex. 2004).

A plaintiff may establish a claim of discrimination under Title VII by presenting direct evidence or by using the indirect method of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

"Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact." *Jones v. Overnite Transportation Co.*, 212 Fed. Appx. 268, 272 (5th Cir. 2006), *citing Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d

893, 897 (5th Cir. 2002).  "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 195 (5th Cir. 2001), *citing Portis v. National Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir, 1994); *Overnite Transportation*, 212 Fed. Appx. at 272.  If a plaintiff produces direct evidence of discrimination, he may "bypass the *McDonnell Douglas* burden-shifting framework [discussed *infra*] commonly applied in discrimination cases and proceed directly to the question of liability." *Moore v. U.S. Dept. of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995); *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001); *Stone v. Parish of East Baton Rouge*, No. 08-31008, 2009 WL 2169122, *2 (5th Cir. July 20, 2009).  "In such 'direct evidence' cases, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Fierros*, 274 F.3d at 192, *quoting Brown v. East Miss. Elec. Power Assoc.*, 989 F.2d 858, 861 (5th Cir. 1993).

Under the *McDonnell Douglas* framework applied to circumstantial evidence cases, a plaintiff must first make a *prima facie* case of employment discrimination.  To establish a *prima facie* case of intentional discrimination under a disparate treatment theory Plaintiff must demonstrate that she "(1) is a member of a protected class (here that she is black and female);

(2) was qualified for the position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, shows that other similarly situated employees [not in the protected class] were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

An "adverse employment action for Title VII discrimination claims based on race, color, religion, sex, or national origin "'include[s] only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007), *quoting Green v. Administrator of Tulane Educ. Fund*, 284 F.3d 641, 657 (5th Cir. 2002). "Title VII was only designed to address '*ultimate* employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999)(emphasis in original), *quoting Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997). If an employer's action fails to have more than a "mere tangential effect on a possible future ultimate employment decision," it does not constitute an adverse employment action. *Mattern,* 104 F.3d at 708. To be actionable, an adverse employment decision must be a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998).

"[A] decision made by an employer that only limits an employee's opportunities for promotion or lateral transfer does not qualify as an adverse employment action under Title VII." *Banks v. East Baton Rouge Parish School Board*, 320 F.3d 570, 575 (5th Cir. 2003), *citing Burger*, 168 F.3d at 878-80 (holding that an employer's refusal of an employee's request for a "purely lateral transfer" does not qualify as an adverse employment action under Title VII). *See also Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995)(affirming decision that an employer's denial of a "desk audit" to a female employee is not an adverse personnel action under Title VII, even though the employee claimed that the decision restricted her "promotional opportunities"), *overruled in part on other grounds in retaliation cases only*, *Burlington N. and Santa Fe Ry. v. White (hereinafter "Burlington N.")*, 548 U.S. 53 (2006)(rejecting limiting actionable retaliation claims to ultimate employment decisions and redefining adverse employment action in retaliation context as any action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination). By themselves, documented reprimands, though potentially affecting future employment decisions, do not qualify as adverse employment decisions. *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971,

981 (E.D. Tex. 2004), *citing Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002)(*abrogated on other grounds in retaliation cases only by Burlington N.*), and *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 470 (5th Cir. 2002).  The same is true of negative performance evaluations, even if they were not deserved. *Thompson*, 344 F. Supp. 2d at 981 (and cases cited therein). Disciplinary write-ups also fail to qualify as adverse employment actions.  *Id.* at 982, *citing Mattern*, 104 F.3d at 707, and *Carthon v. Johnson Controls, Inc.*, 100 Fed. Appx. 993, 997 (5th Cir. 2004)(The employee's "receipt of a single disciplinary warning--without an attendant change in the terms or conditions of his employment--does not qualify as an ultimate employment decision.").  *See also Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)(employer's decision to  take away a big account from an employee after she filed an EEOC complaint did not constitute an adverse employment action even though it decreased her chances of advancement); *Davis v. Miss. Transp. Commission*, 618 F. Supp. 2d 559, 564 (S.D. Miss. 2009)("[W]e have repeatedly held that an employment action that limits an employee's future opportunities for promotion, but does not affect the employee's job duties, compensation, or benefits, does not qualify as an adverse employment action.").

For the fourth prong, "similarly situated" employees are employees who are treated more favorably in "nearly identical"

circumstances[1]; the Fifth Circuit defines "similarly situated"
narrowly. *Silva v. Chertoff*, 512 F. Supp. 2d 792, 803 n.33 (W.D.
Tex. 2007).[2]   Similarly situated individuals must be "nearly

---

[1]*See Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259-
60 (5th Cir. 2009), discussing "similarly situated" employees:

> Employees with different supervisors, who work for
> different divisions of a company or who were the
> subject of adverse employment actions too remote in
> time from that taken against the plaintiff generally
> will not been deemed similarly situated.  Likewise,
> employees who have different work responsibilities or
> who are subjected to adverse employment action for
> dissimilar violations are not similarly situated.  This
> is because we require that an employee who proffers a
> fellow employee as a comparator demonstrate that the
> employment actions at issue were taken "under nearly
> identical circumstances."  The employment actions being
> compared will be deemed to have been taken under nearly
> identical circumstances when the employees being
> compared held the same job or responsibilities, shared
> the same supervisor or had their employment status
> determined by the same person, and have essentially
> comparable violation histories.  And, critically, the
> plaintiff's conduct that drew the adverse employment
> decision must have been "nearly identical" to that of
> the proffered comparator who allegedly drew dissimilar
> employment decisions.  If the "difference between the
> plaintiff's conduct and that of those alleged to be
> similarly situated *accounts for* the difference in
> treatment received from the employer," the employees
> are not similarly situated for the purposes of
> employment discrimination analysis.  [footnotes
> omitted]

[2] District Court Judge Montalvo in *Silva* listed the
following examples in n.33:

> *Wheeler [v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir.
> 2005)], (finding insufficiently identical circumstances
> where the terminated white plaintiff and a black
> manager who remained employed had the same supervisor,
> were both company directors, and were both accused of
> removing company assets at relatively the same time;
> the Court of Appeals noted that the white plaintiff

identical" and must fall outside the plaintiff's protective
class. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.
2005). Where different decision makers or supervisors are
involved, their decisions are rarely "similarly situated" in

---

lied repeatedly during the course of the company's
investigation, while the black employee admitted her
actions; in addition, the value of the property the
black employee removed was "dramatically less" than the
property the white plaintiff removed); *Mayberry [v.
Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.
1995)](finding that the plaintiff had not shown "nearly
identical" circumstances merely because he produced
evidence that white and black employees in the same
position had scrapped parts due to the employer's
operator error or poor workmanship, but were not
disciplined; the plaintiff had not shown that the
undisciplined employees had, like him, a history of
poor work performance and scrapped parts damage
amounting to $8,000); *Little v. Republic Refining Co.*,
924 F.2d 93, 97 (5th Cir. 1991)(concluding that the
plaintiff had not shown "nearly identical"
circumstances because the employee outside the
plaintiff's protected class who allegedly received more
favorable treatment did not have the same supervisor);
*Smith v. Wal-Mart Stores (no. 471)*, 891 F.2d 1177, 1180
(5th Cir. 1990)(determining that the plaintiff and the
employee outside her protected class who allegedly
received preferential treatment were not similarly
situated where the employer discharged the plaintiff
because the plaintiff violated its non-fraternization
policy and the other employee's conduct did not involve
the employer's non-fraternization policy). "[P]ut
another way, the conduct [or circumstances] at issue is
not nearly identical when the difference between the
plaintiff's conduct [or circumstances] and that of
those alleged to be similarly situated accounts for the
difference in treatment received from the employer."
*Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304–
05 (5th Cir. 2000)(finding that the "striking
differences" between the plaintiff's and purportedly
similarly situated employees outside the plaintiff's
protected class "more than account[ed] for the
different treatment they received.").

relevant ways for establishing a *prima facie* case.  *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971 (E.D. Tex. 2004), *citing Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) for the proposition that "[a] demonstration of substantial similarity generally requires a showing that a common supervisor was involved in the decision making").  *See also Perez v. Texas Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004)("We . . . have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'"); *Hockman v. Westward Communications, LLC*, 282 F. Supp. 2d 512, 527-28 (E.D. Tex. 2003)("The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage, is a stringent standard--employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be 'nearly identical.'"), *citing Okoye v. Univ. of Tex. Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001)(Employees are not in nearly identical circumstances when their actions were reviewed by different supervisors; "to establish disparate treatment a plaintiff must show that the employer 'gave preferential treatment to [] [another] employee under 'nearly identical' circumstances' . . .; that is "the misconduct for which [plaintiff] was discharged was nearly identical to that engaged in by . . . [other] employee[s].'")).

If the plaintiff makes a *prima facie* case, there is a presumption of discrimination, and the burden of production then shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. *Chevron Phillips*, 570 F.3d at 615.

If the employer meets this burden, the presumption of discrimination disappears and the plaintiff bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the defendant intentionally discriminated against the plaintiff because of her protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). To do so, the plaintiff must produce substantial evidence showing that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. *Reeves*, 530 U.S. at 143. "Evidence is 'substantial' if it is 'of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2004). Plaintiff may use either of two methods to rebut each of the nondiscriminatory reasons articulated by the employer: pretext or mixed motive. *Rachid v. Jack in The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

For pretext, the plaintiff must show that the defendant's proffered explanation is false or "unworthy of credence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2004), *citing Wallace*, 271 F.3d at 221. One way is to show that the employer treated

plaintiff more harshly that other "similar situated employees" for "nearly identical conduct," i.e, a disparate treatment theory using comparators. *Wallace*, 271 F.3d at 221; *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Although the presumption of discrimination has disappeared, the trier of fact may consider evidence establishing the plaintiff's *prima facie* case and inferences drawn therefrom in determining whether the employer's explanation is pretextual. *Reeves*, 530 U.S. at 143. Coupled with the Plaintiff's *prima facie* case, for purposes of summary judgment the evidence of pretext usually will constitute sufficient evidence to raise an issue of material fact as to whether the employer's reason is credible or merely a pretext for discrimination or, if its reason is true, that a discriminatory reason more likely motivated the decision to effect its adverse employment action. *Reeves*, 530 U.S. at 143, 147–49.[3] Sometimes, however, additional evidence may be required. *Id.* "[T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered

---

[3] In *Reeves*, the Supreme Court found that the Fifth Circuit panel "erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Reeves*, 530 U.S. at 149.

reason is correct.'  In other words, '[i]t is not enough . . . to *dis*believe the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination.'"  *Id*. at 146-47 (emphasis in original), *citing St. Mary's Honor Center*, 509 U.S. at 511, 524, 519.  "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors.  Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  *Id*. at 148-49.

Alternatively, rather than demonstrating that the defendant's articulated reason for its action is a pretext for discrimination, the plaintiff may show that the defendant's reason for the decision, while true, is only one reason for its conduct and another motivating factor is plaintiff's protected characteristic.[4]  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Pinkerton v. U.S. Dept. of Educ.*, 508 F.3d 207, 213 (5th Cir. 2007).

A Title VII plaintiff seeking back pay for employment discrimination has a duty to mitigate damages, i.e., to "use reasonable diligence to obtain 'substantially equivalent' employment."  *Ellerbrook v. Lubbock, Texas*, 465 Fed. Appx. 324,

---

[4] The Fifth Circuit calls this the "modified *McDonnell Douglas*" approach.  *Rachid*, 376 F.3d at 312.

No. 11-10058, 2012 WL 851621, at *12 (5th Cir. Mar. 14, 2012), *quoting Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990).   The employer bears the burden of proving a failure to mitigate.   *Id., citing id.*   The employee must show that (1) substantially equivalent work was available and (2) the employer failed to exercise reasonable diligence to obtain it.   *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003).   "Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which [the former employee] has been discriminatorily terminated."   *Id.*   If the employer shows that the former employee did not use reasonable diligence, the employer does not have to prove the availability of equivalent employment.   *Id.*

To assert a claim of retaliation under Title VII, a plaintiff with only circumstantial evidence must satisfy the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   First the plaintiff must make a *prima facie* case of retaliation that meets three elements: (1) the employee engaged in an activity that is protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria County, Tex. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004),

*cited for that proposition in Cooper v. Dallas Police Assoc.*, 278 Fed. Appx. 318, 320 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1912 (2009).  *See also McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

The statute defines "protected activity" as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII.  42 U.S.C. § 2000e-3(a)(the "opposition clause").  Section 2000e-3(a)(the "participation clause") prohibits retaliation for the making of a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under the statute. *Glorioso v. Mississippi Dept. of Corrections*, 193 F.3d 517, No. 99-60147, 1999 WL 706173, at *3 (5th Cir. Aug. 20, 1999), *citing Grimes v. Texas Department of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).  The complainant employee using the opposition clause must "'show that she had a reasonable belief that the employer was engaged in unlawful employment practices.'"  *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007), *quoting Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000).

"[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."  *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003).  The anti-retaliation

provision of Title VII does not protect an employee from all retaliation, but only from retaliation that produces an injury or harm. *Burlington Northern*, 548 U.S. at 67.

An "adverse employment action," for the second prong, in a retaliation claim only, is not limited to the Fifth Circuit's previous "ultimate employment decision" standard for discrimination claims under the statute. The Supreme Court has held that "the standard for retaliation is broader than for discrimination" in that such actions are not limited to tangible employment actions. For purposes of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006).[5] *See*

---

[5] As the Fifth Circuit explained in *Bouvier*, 2009 WL 3444765, at *3 n.2,

> The Supreme Court has held that Title VII's anti-retaliation provisions prohibit more conduct than its anti-discrimination provisions. *See Burlington Northern*[, 548 U.S. 53]. Expressly limiting its holding to retaliation claims, the Supreme Court abrogated the "ultimate employment [decision] test" and held that employees must show that a reasonable employee would have found the challenged action materially adverse. *Id.* at 67. However, in the Fifth Circuit the "ultimate employment test" still applies to cases alleging discrimination. *See McCoy [v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007)] ("In *Burlington Northern*, the Court expressly limited its holding to Title VII *retaliation* claims . . . ."(emphasis in the original).

*also McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)(same)(*quoting Burlington N.*, 548 U.S. at 68). "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing." *Stewart v. Mississippi Transp. Cm'n*, 586 F.3d 321, 331 (5th Cir. 2009)*, citing Burlington N.*, 548 U.S. at 68.

Unlike the mixed motive causation analysis permissible for other Title VII claims, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. v. Texas Southwest Med. Center v. Nassar*, ____ U.S. ____, 133 S. Ct. 2517, 2533 (2013). *In accord, Finnie v. Lee County, Miss.*, 541 Fed. Appx. 368, 371-72 (5th Cir. Sept. 12, 2013).

The Fifth Circuit has held that temporal proximity between the protected activity and the alleged adverse employment action, by itself, is insufficient to create a genuine issue of material fact for the element of causation. *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed. Appx. 437, 443 (5th Cir. 2007)(collecting cases on temporal proximity). *See also Mayberry v. Vought Aircraft Co.*, 55 F.3d at 1092 (Close timing may be a significant factor, but not necessarily determinative of

the relation between the protected activity and the adverse action.); *McCoy*, 492 F.3d 562 (although temporal proximity between the protected activity and an adverse employment action may be enough of a "causal connection" to establish a *prima facie* case, "once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.").

"'Petty slights, minor annoyances, and simple lack of good manners'" are not actionable retaliatory conduct that would dissuade a reasonable employee from making a charge of discrimination. *Stewart*, *v. Mississippi Transp. Cm'n*, 586 F.3d at 331*, citing Burlington Northern*, 548 U.S. at 68. "'The significance of any particular act of retaliation will often depend upon the particular circumstances.  Context matters.'" *Id.* at *8, *citing Burlington N.*, 548 U.S. at 69.  If the context shows no adverse impact as a result and no blame can be attributed to the employee that "might carry a stigma in the workplace," an employment action is not an adverse action.  *Id.* "'[A] lateral reassignment to a position with equal pay could amount to a materially adverse action in some circumstances,'" which should be judged from the viewpoint of a reasonable person in the plaintiff's position, considering all the circumstances: did the reassignment affect the employee's job title, grade, duties hours, salary, or benefits or cause a diminution or

increase in prestige or standing among her co-workers?  *Id.,*
*citing Aryain*, 534 F.3d at 485.

If the plaintiff succeeds in making a *prima facie* case of
retaliation, a presumption of discrimination arises, and the
burden shifts to the defendant employer, to provide a legitimate,
nonretaliatory reason for the adverse employment action. *Hockman*
*v. Westward Communications LLC*, 407 F.3d 317, 330 (5th Cir. 2004),
*cited for that proposition in Cooper*, 278 Fed. Appx. at 320.  If
the employer succeeds, under the *McDonnell Douglas* framework the
presumption of discrimination falls away and the plaintiff must
show that the employer's articulated reason for its action is
merely a pretext for retaliation. *Cooper*, 278 Fed. Appx. at 320,
*citing McDonnell Douglas*, 411 U.S. at 804.  The plaintiff must
rebut each nondiscriminatory or nonretaliatory reason articulated
by the employer. *McCoy*, 492 F.3d at 557.  The plaintiff can
show pretext "by showing that the employer's proffered
explanation is false or 'unworthy of credence.'" *Laxton v. Gap,*
*Inc.*, 333 F.3d 572, 578 (5th Cir. 2003), *quoting Reeves v.*
*Sanderson Plumbing Prods., Inc.*, 530 U.S. at 143.  For example,
Plaintiff could show that she is clearly better qualified than
the person who got the job, promotion, raise, etc.,[6] or that the

---

[6] "However, the bar is set high for this kind of evidence
because differences in qualification are generally not probative
evidence of discrimination unless those disparities are 'of such
a weight and significance that no reasonable person, in the
exercise of impartial judgment, could have chosen the candidate
selected over the plaintiff for the job in question.'"

employer's articulated reason is false by showing inconsistency
in the employer's explanations at different times. *Burrell*, 482
F.3d at 412, *citing Celestine v. Petroleos de Venezuella SA*, 266
F.3d 343, 356-57 (5th Cir. 2001), and *Gee v. Principi*, 289 F.3d
342, 347-48 (5th Cir. 2002)("a factfinder may infer the ultimate
fact of retaliation by the falsity of the explanation").  "[A]
plaintiff's *prima facie* case, combined with sufficient evidence
to find that the employer's asserted justification is false, may
permit the trier of fact to conclude that the employer unlawfully
discriminated," and thereby preclude summary judgment. *Reeves*,
530 U.S. at 135.

To prevail on a hostile work environment claim Johnson must
prove that his "workplace is permeated with 'discriminatory
intimidation, ridicule, and insult,' that is 'sufficiently severe
or pervasive to alter the conditions of the victim's employment
and create an abusive working environment." *Harris v. Forklift
Systems, Inc.*, 510 U.S. 17, 21 (1993), *quoting Meritor Sav. Bank,
FSB v. Vinson*, 477 U.S. 57, 65-67 (1986). The elements of a
sexually hostile work environment claim are (1) the plaintiff
belongs to a protected group, (2) she was subjected to unwelcome
sexual harassment, (3) the harassment was based on the
plaintiff's gender, (4) the harassment affected a term,

---

*Celestine*, 266 F.3d at 357, *quoting Deines v. Texas Dept. of
Protective and Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir.
1999).

condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 Fed. Appx. 874, 880 (5th Cir. 2010), *citing Mata v. Univ. of Tex. Hot. Health Sci,. Ctr.*, 261 F.3d 512, 523 (5th Cir. 2001). The court must look at "all the circumstances," including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. To be actionable, the hostile environment must be both objectively and subjectively sexually offensive. *Id.* at 21-22. "[Simple teasing, offhand comments, and isolated incidents" do not constitute actionable harassment "unless extremely serious." *Forager*, 524 U.S. at 788.

### FJC's Motion for Summary Judgment (#27)

FJC's extensive motion for summary judgment, supported by fifty-two documents as evidence, more than satisfies FJC's burden of proof. Rather than reiterate all of the points the motion makes, the Court refers the parties to the motion and summarizes its major contentions.

FJC hired Jones on February 28, 2010 as an Armed Protection Security Officer under a contract FJC was awarded with Federal Protective Services for the United States Department of Homeland Security for South Texas and assigned Jones to work the night

shift at a post-hurricane-Ike FDMA job site in Texas City.  The
position was governed by a Collective Bargaining Agreement
("CBA") between FJC and United Government Security Officers of
America ("UGSOA") Local #237.  Ex. C, Affid. of Stone, p.2, ¶5,
and Ex. 2 (copy of CBA).  At the time she was hired, she received
the FJC employee handbook, which *inter alia* contained its
policies barring discrimination based on any protected factor
under Title VII, including race and sex, and retaliation for
complaining about discrimination.  Ex. C, Affid. of Jennifer
Stone, Human Resources Director for FJC, p.1, ¶3, and Ex. D,
Jones Dep., p. 179.

     Jones signed an employment letter when she was hired that
expressly states that her employment was at-will and that "we
cannot guarantee a particular shift or post location."  Ex. C,
Affid. of Stone, p.2 and Ex. 3; Ex. D., Jones Dep., p. 45 and Ex.
8.

     An alarm system soon replaced the night shift workers at the
Texas City site, and Jones's and all FJC guard positions were
eliminated in April 2010.  To obtain a full-time post, the CBA
required Jones to bid on open posts, in accordance with the CBA
criteria and based upon seniority, [7] but she never bid for any

_____

     [7] Jones had no contract security under the CBA when she was
hired by FJC.  Ex. A. Johnson Affid., p. 2, ¶ 8.  She had worked
for Superior Protection Services when it had the Federal
Protective Services Contract, but was fired in 2006 for *inter
alia* insubordination, leaving her work station, carrying an
unregistered weapon, striking a supervisor, and abandoning her
post, and she worked for several employers before FJC hired her
in 2010.  Ex. D, Jones Dep., pp. 21-22, 15, 58, 27-28, 24 and Ex.
5.  Jones sued Superior Protection Services ("Superior") after

open position during her employment with FJC.  Ex. A, Affid. of
Albert Johnson, Program Manager for FJC, p. 2, ¶¶.  Thus after
her position was eliminated, she was placed on reserve status and
assigned to fill in for open positions.

Johnson, a black man, became Program Manager in July 2010.
Ex. A, Johnson Affid., p. 3, ¶9 and p. 1, ¶ 2.  Jones then
reported to either Lieutenant Michael Mitchell or Lieutenant
Sharita Harvey, a black woman, and to their direct supervisor,
Captain Kelly West.

On July 19, 2010 Jones filed an EEOC charge against FJC
complaining that she was not given her choice of job assignments
and that FJC's job assignments discriminated against females.
Jones also complained that she was being retaliated against for
filing her earlier charge and lawsuit against Superior, her
previous employer.  Ex. D, Jones Dep., p. 55 and Ex. 10, EEOC
Charge.  After an investigation the EEOC notified her on January
10, 2012 that her complaint lacked merit, that her offer letter
expressly stated that she was not guaranteed her job choice, and
that her work assignments were governed by the CBA.  Ex. D, Jones
Dep., pp. 60-61 and Ex. 13, Jan. 10, 2011 Pre-Determination
Letter.

Before the EEOC finally dismissed the charge, Jones filed an

---

she was discharged, alleging sexual harassment, sex
discrimination, and retaliation.  Johnson was a manager for
Superior in 2006 while Jones was employed there, and in her
lawsuit she alleged that she had complained to Johnson about a
co-worker, but claimed he did nothing about her complaint.  Ex.
D, Jones Dep., p. 12, and Ex. 1, Superior Lawsuit, p.2.

amendment on April 8, 2011 that complained that she was wrongfully removed from the Federal Contract without explanation and alleged retaliation for filing her EEOC charge. Jones asserted that her suspension was discriminatory based on sex and in retaliation for her filing of her EEOC charge. Ex. D, Jones Dep., pp. 62-63, and Ex. 16, First Amended Charge. FJC asserts that Jones was removed from the contract on March 21, 2011 after Workforce Solutions informed her managers that after she left work, she had entered its premises with her service weapon despite posted signs prohibiting firearms on the premises and despite FJC's policy[8] regarding company-issued weapons. Ex. A, Johnson Affid., p. 3, ¶11. When Jones was asked to remove the weapon, she refused, and police were called. Ex. D, Jones Dep., pp. 65-67, and Ex. 17; Ex. A, Johnson Affid., p. 3,¶ 11, and Ex. 1. Johnson refused FJC's request that she explain her off-duty conduct. FJC suspended her for two weeks because of her violation of its weapons policy and her refusal to cooperate in the investigation. Ex. A, Johnson Affid., p.3, ¶¶ 10-11.

On May 30, 2012, Jones again amended her EEOC charge to add allegations that Johnson and FJC client representative, Federal Protective Officer Thibodeaux, in another instance of sex

---

[8] The policy, which was signed by Jones when her weapon was issued, stated in relevant part, "I understand that any weapon issued to me by FJC Security Services shall be carried by me only during the course of my duty with FJC Security Services and that FJC Security Services prohibits my carrying a FJC-issued weapon other than during the course of employment (except directly en route to or returning from work where permitted by law.)" Ex. D, Jones Dep., pp. 65-67 and Ex. 17; Ex. A, Johnson Affid., o. 3, ¶ 11 and Ex. 1.

discrimination and retaliation, told her she was being investigated for a complaint against her with Thibodeaux's office, but when she asked for more information, neither man would provide any and she was told that she had to wait until the Federal investigation was complete  Ex. D, Jones Dep, pp. 68-69 and Ex. 18, Second Amended Charge.

On April 9, 2012 Thibodeaux told Johnson that a government employee had made a complaint against Jones and asked to talk to Jones about it.  Ex. A, Johnson Affid., p. 4, ¶ 13.  Johnson was present during the meeting, where Jones refused to answer any of Thibodeaux's questions.  *Id.*  FJC did not know the nature of the complaint against Jones (a tenant complained that she was intimidated by Jones during a parking altercation at the LaBranch federal building) at that time and knew only that she refused to cooperate.  Ex. A, Johnson Affid., p. 4, ¶¶ 13-14, and Ex. 2.  On September 19, 2012 the EEOC dismissed Jones' discharge and both amendments without finding cause.  Ex. D, Jones Dep., pp. 71-72, and Ex. 19 (EEOC Dismissal).

Because FJC's client, the Department of Homeland Security, prohibited FJC from assigning Jones to multiple positions because of numerous significant complaints from federal officers about her performance, including neglect of duties, poor attitude, and post abandonment, [9]  FJC was required to comply with the government's requests and thus was unable to assign her to a

---

[9] Citing documentary support, FJC provides details of several such incidents of wrongful conduct by Jones at #27, pp. 11-12.

number of federal posts, including any IRS offices, the downtown Social Security Administration and the SSA ODAR offices.  Ex. A, Johnson Affid., pp.4-5, ¶¶ 14-16; Ex. D, Jones Dep., pp. 74-75, 84.  Furthermore Johnson refused to work at other federal locations rather than take constructive criticism and improve her performance.  Again, citing authority, FJC details a number of examples.  #27, pp. 18-19.  [10]  She also regularly declined assignments offered to her, again with FJC's detailed examples supported by documentary evidence.  *Id.* at pp. 20-21.

Jones filed the instant lawsuit on December 28, 2012.  FJC continued to try to provide Jones with assignments to posts, but her conduct continued to obstruct its efforts, as shown by FJC, including failure to appear, walking out, reusing assignments, refusing to explain her failures, altercations, #27, pp. 22-27. It finally terminated Jones after she returned from a suspension. She called in at 3:47 a.m. on June 27, 2013 and left a voice message for Captain West that she had a family emergency [11] and would not report for her 7:00 a.m. job assignment that day.  Ex. B, West Affid., p. 1, ¶ 4 and Ex. 1.  The CBA required Jones to give notice four hours in advance of any absences, so this notice was untimely.  Ex. A, Johnson Aff., p. 8, ¶27.  Furthermore she

---

[10] The Court uses the electronic page numbers at the upper right hand corner of the documents.

[11] The "family emergency" was that a window screen on her residence was bent and she feared someone was trying to break into her apartment.  FJC states that Jones did not call the police and did not have the screen fixed for several weeks.  Ex. D, Jones Dep. pp., 164-5.

failed to state that she would not return to work the next day. Ex. D, Jones Dep., pp. 155-56; Ex. B, West Affid., p. 1, ¶ 4, Ex. 1.  Late on the 28th she informed her supervisor that she would return to her regular schedule on July 1st.  Ex. D, Jones Dep., p. 157 and Ex. 70; Ex. A, Johnson Affid., p. 8, ¶27 and Ex. 36. Johnson told her to report to the FJC offices on that day at 2 p.m. instead to explain why she had not called in or come to work.  Ex. D, Jones Dep., p. 157 & Ex. 71; Ex. A, Johnson Dep., pp. 8-9, ¶ 27 and Ex. 35.  Jones failed to appear on July 1st and did not contact FJC during the whole month of July.  Ex. D, Jones Dep., p. 163; Ex. A, Johnson Affid., p. 9, ¶ 28.  She filed an unemployment claim on July 26, 2013, but it was denied after TWC's investigation found that Jones had abandoned her last work by walking off the job and/or failing to report for work while work was still available for her, and that her "reason for quitting was not good cause connected with the work."  Ex. D, Jones Dep., pp. 165-67. Ex. C, Stone Affid., p. 3, ¶ 10 and Ex. 4; Ex. D, Jones Dep., pp. 165-67.

On August 2, 2013 FJC sent Jones a letter asking her either to confirm that she has resigned or to contact FJC to schedule a meeting to discuss her "no-show/no-call" conduct.  Ex. D, Jones Dep., p. 168 and Ex. 73; Ex. A, Johnson Affid., p. 9, ¶ 29 and Ex. 40.  On August 8, 2012 Jones informed Johnson that she had not quit and would prefer to attend any meeting by telephone.  On August 13, 2013 Johnson informed Jones that she had to report in person at FJC and that Human Resources and the Director would participate via phone conference because they are not located in

Houston.  Instead, on August 13th Jones did not report in person, but called in.  Ex. A, Johnson Affid., p. 9, ¶¶ 30-31; Ex. D, Jones Dep., pp. 170-71.  She was again told she had to appear in person.  Ex. A, Johnson, p. 10, ¶ 31; Ex. D, Jones. Dep., pp. 172-73.  Jones made no effort to reschedule the meeting.  Ex. D, Jones Dep., p. 174.

On August 15, 2013, FJC sent Jones formal notice that her employment was terminated because of her failure to report for work, failure to report her anticipated absence on June 28, 2013, failure to contact the FJC office at 2:00 p.m. on July 1, 2013, failure to speak to FJC management any time during July 2013, and refusal to follow a direct request to appear in person at the FJC office on August 13, 2012.  Ex. A, Johnson Affid., p. 10 ¶ 32 and Ex. 41; Ex. D, Jones Dep., pp. 174-75 and Ex. 76; Ex. C, Stone Affid., p. 4, ¶ 14.

Jones filed a new charge with the EEOC on August 28, 2012, alleging that she was terminated because of her sex and race and in retaliation for her lawsuit and the EEOC charge on which this lawsuit is based.  Ex. D, Jones Dep., p. 72 & Ex. 20.

FJC moves for summary judgment on Plaintiff's claim of discriminatory job assignments, treatment, and termination based on sex and/or race because she cannot establish a *prima facie* case.  She cannot show that she was treated less favorably in scheduling or discipline because of her sex or race than other similarly situated employees outside of her protected class because she cannot show other FJC employees outside of her protected class engaged in nearly identical conduct to hers (any

male employee or any employee of a different race with no seniority assigned to the FEMA Texas City location in April 2010 who was given a permanent assignment after the FEMA job ended). Nor can she identify any one who repeatedly turned down assignments, walked out of training, been removed by the Department of Homeland Security from all IRS buildings, the downtown Social Security Administration and the SSA ODAR office, but who was given a more favorable work schedule than she was. Nor can she identify any one who brought a gun after hours into another business that prohibited weapons, refused to leave, required police involvement, refused to cooperate with her managers in the investigation, but who was not suspended for two weeks. Though she claims she should have been assigned to an FBI security post, she cannot show that such a position became available, that she applied for it, or that she was qualified for it.

Moreover, because FJC has established legitimate non-discriminatory reasons for its employment decisions, the burden shifts to Plaintiff to prove that FJC's reasons were pretextual or that race or sex was a motivating factor in that decisions. She has failed to provide any such evidence.

FJC also provides evidence that Plaintiff failed to exhaust administrative remedies on her race discrimination claim, as her 2010 charge and later amendments upon which this suit was based alleged only sex discrimination. Ex. D, Jones Dep., pp. 68-69 and Ex. 18, Second Amended Charge. Thus the race discrimination claims must be dismissed for failure to exhaust administrative

remedies.

Regarding Plaintiff's retaliation claim, FJC insists that Jones cannot establish a *prima facie* case because she cannot demonstrate any causal connection between the filing of a lawsuit against her earlier employer, Superior, in 2007, her filing of any EEOC charge against FJC, or her filing of this lawsuit and any adverse employment action taken against her.  FJC hired Plaintiff in February 2010, years after Superior fired her and after she sued Superior.  Ex. E, Jones Dep., pp. 21-22.  Thus there is no temporal proximity to support her retaliation claim. Nor is there any evidence that FJC's or Johnson's actions or inaction affected Plaintiff's suing Superior or any of the charges she filed against FJC in this litigation.  The evidence shows that FJC continued to attempt to place Jones in jobs for more than three years after she filed her first EEOC charge against FJC in July 2010, including full time work for nine months after she filed this suit in November 2012 until she was terminated in August 2013 as a "no-call/no-show," in spite of ongoing performance problems and refusals by clients to permit her to work in numerous locations because of her misconduct on their sites.  Ex. A. Johnson Aff., pp. 4-10, ¶¶ 14-32 and Exs. 2-43.  Furthermore, FJC has shown that the adverse employment actions it took against Plaintiff were for legitimate, non-retaliatory reasons.  For example, as discussed *supra*, her first position at FEMA in Texas City was eliminated when the site was shut down; she was required to bid on open positions under the CBA but did not have contract seniority in April 2010; she did

not bid on any open positions while in FJC's employ; frequently FJC could not assign her to positions because the federal government refused to have her work on its sites because of her performance problems; and Plaintiff refused to work at other sites to which FJC tried to assign her.  FJC further contends that it terminated her for legitimate, non-discriminatory reasons, as documented *supra*.

Plaintiff has failed to file a response to FJC's motion and thus failed to meet her burden of proof to show that the reasons provided and supported by FJC are pretextual and that but for her protected conduct, the adverse employment actions would not have occurred.

Alternatively, FJC asks for partial summary judgment on those facts that are uncontroverted.

### Court's Decision

The Court finds that FJC has more than met its burden of proof, while Plaintiff has failed to respond and to raise a genuine issue of material fact regarding any of her claims against FJC.  Accordingly, the Court

ORDERS that FJC's motion for summary judgment (#27) is GRANTED.  Final judgment will issue by separate order.

**SIGNED** at Houston, Texas, this __19th__ day of __August__, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE